IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| **MICHAEL SANDERS** § <br> *Plaintiff* § <br> § <br> **VS.** § <br> § <br> § <br> § <br> **CITY OF SAN ANTONIO, TEXAS AND** § <br> **JOSUE VALLEJO-MARTINEZ** § <br> *Defendants* § <br> § | CIVIL ACTION NO._____ <br><br><br> JURY TRIAL DEMANDED |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**TO THE HONORABLE JUDGE OF SAID COURT:**

NOW COMES **MICHAEL SANDERS**, referred to herein as Plaintiff, complaining of Defendants **CITY OF SAN ANTONIO, TEXAS** ("City") and **JOSUE VALLEJO-MARTINEZ** ("Officer Vallejo-Martinez"), in his individual capacity, hereinafter called Defendants, and for cause of action, would respectfully show unto the Court and jury the following:

I.

**NATURE OF THE CASE**

**THE CLAIM:** CITY OF SAN ANTONIO, TEXAS Officer JOSUE VALLEJO-MARTINEZ used excessive force against MICHAEL SANDERS in violation of his individual rights under the Fourth Amendment to the United States Constitution when he illegally and brutally tased him on 2 May 2021, without factual or legal cause to do so. This violence was caused by the CITY OF SAN ANTONIO, TEXAS Police Department policies, customs, and/or practices allowing Defendant Vallejo-Martinez and other City of San Antonio officers to utilize City uniforms and equipment in "off-duty" jobs and a City of San Antonio use of force policy that does not expressly disallow

1

the use of tasers or other electronic control devices (ECDs) when a subject is wet. Mr. Sanders's injuries resulted directly and only from this clearly excessive use of force; and the excessiveness of that force was clearly unreasonable. The actions alleged herein are of such a nature as to shock the conscience and are cruel and unusual in their oppressiveness.

## II.
## PARTIES

1. Plaintiff, **MICHAEL SANDERS** is a resident of the CITY OF SAN ANTONIO/CORPUS CHRISTI, TEXAS.

2. Defendant **CITY OF SAN ANTONIO, TX** is a political subdivision of the State of Texas and the City of San Antonio, TX Police Department is an agency operated thereunder.

3. The City of San Antonio, TX Police Department is funded and operated by the City of San Antonio, TX City Council. Mayor Ron Nirenberg is the chief elected officer of the City of San Antonio, TX. Mr. Erik Walsh is the City Manager of the City of San Antonio and its chief executive officer with respect to its "operations, organizational development, budget, fiscal policy, and contract management."[3]

4. Mayor Nirenberg and/or Mr. Walsh, is or are responsible for implementing the policies and decisions of the City of San Antonio, TX City Council as the City's primary administrator(s).

5. Mayor and the City Council are tasked with appropriating, reviewing, and implementing the City of San Antonio, TX Police Department budget, policies, procedures, practices, and customs, including the acts and omissions related thereto, at issue in this lawsuit.

6. Chief William McManus is the Chief of Police of the City of San Antonio, TX and the primary policymaker tasked with creating, implementing, and reviewing the City of San Antonio, TX Police Department policies, procedures, practices, and customs.

7. The City of San Antonio, TX may be served by and through Mayor Ron Nirenberg, at 100 Military Plaza, San Antonio, TX 78205, or wherever he may be found.

8. Defendant **JOSUE VALLEJO-MARTINEZ** is a police officer employed by the City of San Antonio, TX Police Department and at all times material herein was a police officer acting in the course and scope of his private, "off-duty" employment for the Edge and Stone

---

[3] https://www.sa.gov/Directory/Departments/CMO/Biography.

2

Apartments, while utilizing his City of San Antonio, TX uniform, firearm, ECD/taser, other implements assigned to him through the course of his employment with the City of San Antonio Police Department, and, most notably, his adherence to the City of San Antonio Police Department policies, customs, and practices. He may be served at his place of employment at the City of San Antonio, TX Police Department located at 315 S. Santa Rosa, San Antonio, TX 78207, or wherever he may be found. Defendant Vallejo-Martinez is being sued in his individual capacity.

## III.
## JURISDICTION

9. The subject matter in controversy and damages sought are within the jurisdictional limits of this Court.
10. This Court also has jurisdiction over this suit under 42 U.S.C. § 1983.
11. Venue is also appropriate in the Western District of Texas pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claim occurred in Bexar County, Texas, which is in the San Antonio Division of the Western District of Texas.

## IV.
## FACTS AND ALLEGATIONS

12. On 2 May 2021, MICHAEL SANDERS had his constitutional rights violated when he was unnecessarily and unjustifiably tased by Defendant, Officer Josue Vallejo-Martinez of the City of San Antonio, TX Police Department.
13. At approximately 2152 that evening, Mr. Sanders was down at the pool in his apartment complex, the Edge and Stone Apartments, located at 24625 Wilderness Oak, San Antonio, TX 78260.
14. While enjoying the pool with his family and friends, Mr. Sanders could see Officer Vallejo-Martinez walking through the parking lot above the pool area on what appeared to be his patrol as a courtesy officer.

15. As he was near the pool, he made note of the time because he checked his watch to see if his group was there past the closing time — 2200 — for the pool.

16. Since he realized it was nearing closing time, Mr. Sanders mentioned to the group of residents that they would need to start packing up for the evening because of the time. Mr. Sanders then observed Officer Vallejo-Martinez approach the main pool gate and shine his flashlight towards the group while yelling for them to pack their things and leave or they would be arrested for Public Intoxication (PI).

17. At this point, he decided to approach Officer Vallejo-Martinez to talk with him about why he would threaten a group of residents with arrest for no reason.

18. As Mr. Sanders approached Officer Vallejo-Martinez as he entered the gate, he began to ask him why he was threatening arrest. Officer Vallejo-Martinez was very short with him and refused to answer his questions.

19. Mr. Sanders continued to ask who his group was endangering because they were a passive group of residents concluding a relaxing Sunday evening at the pool. This is important, because in the state of Texas, the law on public intoxication requires proof of endangerment, reading as thus: "A person commits an offense if the person appears in a public place while intoxicated to the degree that the person may endanger the person or another."[6]

20. Mr. Sanders turned around and walked back towards the group and his possessions to continue gathering them as he followed.

21. Mr. Sanders continued to inquire who he was endangering, since as a licensed Texas Peace Officer, he knew particularly well that this is a necessary element of the charge of public intoxication.

22. Mr. Sanders approached his stuff and started to gather his belongings as instructed. He then turned around to find Officer Vallejo-Martinez directly behind his with his taser unholstered and at his waistline.

23. When he saw this, he was taken aback and lifted both of his hands in the air to assure Officer Vallejo-Martinez he was not a physical threat to him.

24. As he raised my arms, Officer Vallejo-Martinez reached out to grab his right arm and brushed his right forearm with his hand. At no point then or at any point thereafter did Mr. Sanders resist or fight Officer Vallejo-Martinez in any way.

---

[6] Tex. Pen. Code. §49.02(a).

25. At this point, Officer Vallejo-Martinez then deployed his taser to Mr. Sanders' chest with his hands still in the air frozen from the shock of the taser.
26. Mr. Sanders did not fall while being tased.
27. When the taser timed out, Mr. Sanders lowered his hands and offered his right arm to him and he placed Mr. Sanders in handcuffs and escorted him to a lounge chair to sit him down.
28. As Mr. Sanders sat waiting on other officers to assist Officer Vallejo-Martinez, the group Mr. Sanders was with started recording with their cell phones.
29. The crowd was asking Officer Vallejo-Martinez why he tased Mr. Sanders and placed him under arrest because they were all within 10-15 feet of their interaction and had not seen any physically aggressive acts whatsoever perpetrated by Mr. Sanders.
30. Officer Vallejo-Martinez continued to justify his indefensible actions and even continued to threaten other residents to leave the area or he would arrest them as well.
31. One of the residents asked why he was there and he stated that he was called to the pool for a disturbance.
32. Mr. Sanders and the rest of his group had all been there for a couple of hours and no disturbance occurred until Officer Vallejo-Martinez came to the pool.
33. The other residents refused to leave the area so they could provide statements to officers of these actions.
34. Mr. Sanders was placed under arrest and transported to the hospital for check-up and then booked into the municipal jail on the charges of resisting arrest and public intoxication, both of which were subsequently dismissed.

V.

## CAUSES OF ACTION

**COUNT ONE - EXCESSIVE FORCE**

**Violation of the Fourth Amendment Pursuant to 42 U.S.C. §1983 Against Defendant Vallejo-Martinez**

35. Mr. Sanders repeats and re-alleges each and every allegation contained in the above paragraphs as though fully delineated below.

### *Resisting Arrest*

36. Codified under Section 38.03 of the Texas Penal Code, the law on resisting arrest is as follows:

> **(a) A person commits an offense if he intentionally prevents or obstructs a person he knows is a peace officer or a person acting in a peace officer's presence and at his direction *from effecting an arrest, search, or transportation of the actor* or another by using force against the peace officer or another.** Tex. Pen. Code, §38.03 (1994) (emphasis added).

37. For clarity, reasonable suspicion "must be supported by particular and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant an intrusion…The officer, of course, must be able to articulate something more than an 'inchoate and unparticularized…'hunch.'" *Goodson,* at 736 (citing *United States v. Michelet*, 13 F.3d 838, 840 (5th Cir. 1994) (en banc)).

38. Probable cause, by contrast, "is present when the totality of the circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Id.*, at 740 (citing *Vance v. Nunnery*, 137 F.3d 270, 276 (5th Cir. 1998 (quoting *United States v. Levine*, 80 F.3d 129, 132 (5th Cir. 1996)).

39. Accordingly, Defendant Vallejo-Martinez had no reasonable suspicion to detain Mr. Sanders for resisting arrest or public intoxication. He also had no reasonable suspicion that he had committed any other crime, both at the time he tased him or at any point thereafter.

40. Defendant Vallejo-Martinez had ***no reason whatsoever*** to demand Mr. Sanders out of the pool area or do ***anything*** other than inform him and his group that the pool was about to close and send them on their way.

41. Defendant Vallejo-Martinez *most definitely* had no justification whatsoever for using force of any kind, let alone less-than-lethal force of the magnitude inflicted by an electronic control device (ECD) or taser.

42. Defendant Vallejo-Martinez, acting under color of law, deprived Mr. Sanders of the rights and privileges secured his by the Fourth and Fourteenth Amendments to the United States Constitution to be free from illegal and unreasonable seizures by the use of force.

43. Accordingly, Mr. Sanders commences this action pursuant to 42 U.S.C. § 1983.

44. "In order to present a successful claim of excessive force under § 1983, the plaintiff must show (1) an injury; (2) that resulted directly and only from a use of force that was excessive to the need of force; and (3) that the use of force was unreasonable under the circumstances." *Sullivan v. Allred,* 297 Fed. Appx. 339, 342 (5th Cir. 2008) (citing *Ramirez v. Knoulton,* 542 F.3d 124, 128 (5th Cir. 2008), *Bush v. Strain,* 513 F.3d 492, 501 (5th Cir. 2008), and *Freeman v. Gore,* 483 F.3d 404, 416 (5th Cir. 2007) (citing *Tarver v. City of Edna,* 410 F.3d 745, 751 (5th Cir. 2005)(see also *Cooper v. Brown*, 844 F.3d 517, 522 (5th Cir. 2016)).

45. Mr. Sanders was unquestionably injured in his tasing by Defendant. His injury was visible, on scene, as he reacted in a manner evincing pain. As the Fifth Circuit has opined, "the eggshell skull rule is applicable in 42 U.S.C. § 1983 cases," recognizing that "a tortfeasor [ — here, Defendant Vallejo-Martinez —] takes [his] victim as [s]he finds [his]." *Darden v. City of Fort Worth, Texas,* 880 F.3d 722, 731 (5th Cir.), *cert. denied sub nom. City of Fort Worth, Tex. v. Darden,* 139 S. Ct. 69, 202 L.Ed. 2d 23 (2018). (citing *Dunn v. Denk*, 54 F.3d 248, 251 (5th Cir. 1995), *rev'd on other grounds* 79 F.3d 401 (5th Cir. 1996) (en banc); *see also Koch v. United States*, 857 F.3d 267, 274 (5th Cir. 2017).

46. With respect to the injury, significant injury is not required, per se; however, the injury must be "more than de minimis." *Hanks v. Rogers*, 853 F. 3d 738 (5th Cir. 2017), (citing *Tarver v. City of Edna*, 410 F.3d 745, 752 (5th Cir. 2005) (citing *Harper v. Harris County, Tex.*, 21 F.3d 597, 600 (5th Cir. 1994)), but "the injury must be more than *de minimis*," (citing *Vallejo-Martinez v. Bramer*, 180 F.3d 699, 703 (5th Cir.1999)).

47. Mr. Sanders's injury resulted directly and only from a use of force that was excessive to the need of force, to wit: being tased when he was not posing any threat to Defendant,

7

*visibly and obviously* unarmed, and under no legal duty whatsoever to leave the location he was in, as the attempted detention was completely uncalled for under the circumstances.

48. The excessiveness of the force was clearly unreasonable, particularly considering Mr. Sanders was not only not posing a threat to Defendant, but he was literally just complying with Defendant's instructions, wet from having recently been in the pool. He was not taking or making any aggressive stances, movements, or actions when Defendant Vallejo-Martinez decided to unjustifiably put hands on him and ultimately tase him.

49. "The relationship between the need and the amount of force used" must be considered and assessed by the officers using force to "effectuate [a] subject's compliance." *Newman v. Guedry,* 703 F.3d 757, 763 (5th Cir. 2012) (quoting *Deville v. Marcantel,* 567 F.3d 156, 167 (5th Cir. 2009) (see also, *Hanks v. Rogers*, 853 F. 3d 738 (5th Cir. 2017)).

50. **_An officer tasing, striking, or otherwise violently slamming an arrestee who is not actively resisting arrest is a constitutional violation_**. *Darden v. City of Fort Worth, Texas,* 880 F.3d 722, at 731 (5th Cir.), *cert. denied sub nom. City of Fort Worth, Tex. v. Darden,* 139 S. Ct. 69, 202 L.Ed. 2d 23 (2018)(emphasis added).

51. Fifth Circuit case law establishes that the degree of force an officer can employ is reduced when an arrestee is not actively resisting arrest. *Id.*

52. Mr. Sanders was not actively, passively, or otherwise resisting arrest when forcefully accosted and tased by Defendant Vallejo-Martinez.

53. In determining whether the officer's use of force was "objectively reasonable," courts utilize a three-factor test outlined in the seminal Supreme Court case *Graham v. Connor:*

    a. *Severity of the crime;*

    b. *Immediate threat;* and

    c. Whether the subject is *actively resisting* or *attempting to evade arrest by fleeing.* *Graham v. Connor,* 490 U.S. 386, 396 (1989).

54. Analyses surrounding whether a particular use of force was objectively reasonable require "a careful balancing of the nature and quality of the intrusion on the individual's…interests against the countervailing governmental interests at stake…[requiring] careful attention to the facts and circumstances of each particular case." Seth Stoughton, et al., Evaluating Police Uses of Force (2020) (citing *Graham v. Connor*, at 396).

55. "Reasonableness" is judged from the perspective of a *reasonable officer on the scene*, as opposed to with the "20/20 vision of hindsight." *Ibid* (citing *Graham v. Connor*, at 396)(emphasis added).

56. Under *Graham,* courts are charged to rely on what a "reasonable officer" would have perceived, irrespective as to whether the officer *actually* perceived it that way. *Ibid* (citing *Graham v. Connor*, at 396).

57. As to the three elements of the *Graham* objective reasonableness test, **none** of the three factors is satisfied in favor of Defendant.

58. At the point Defendant perceived Mr. Sanders, he was allegedly merely committing public intoxication, and subsequently, resisting arrest. He had not been accused of a crime above an alleged Class C misdemeanor. As such, there is **no** severity of any crime because no crime whatsoever for which he could be arrested had allegedly been committed.

59. Consequently, no force **whatsoever** was justified. However, **even if** Mr. Sanders had committed resisting arrest— a misdemeanor under Texas law — the Fifth Circuit has said that the "severity" factor of *Graham v. Connor* "militated against the use of force while the alleged crime was a misdemeanor," rendering Defendant's use of force wholly unjustified and excessive. *Reyes v. Bridgwater*, 362 F.App'x 403, 407 n.5 (5th Cir. 2010).

60. The other two factors, however, also weigh heavily against Defendant Vallejo-Martinez.

61. Mr. Sanders was not an immediate threat, as he was merely asking how he was endangering himself or others as he was accosted and tased. He made no aggressive movements towards Defendant and was visibly unarmed. He did not even verbally berate or disrespect Defendant. He was relatively calm throughout the entire encounter, remarking only that he did not need to leave the location as he lived there and the time to enjoy the pool had not yet expired.

62. Mr. Sanders was also not actively or passively resisting Defendant or attempting to flee or evade arrest. Even after Defendant began accosting him, Mr. Sanders did not fight or resist his, despite Defendant falsely claiming he was. He was most certainly not attempting to flee either.

63. The fact that no crime besides public intoxication had allegedly been committed or even suspected and Mr. Sanders was not a threat whatsoever makes it clear that Defendant's belief that force was needed and the accompanying use of force were completely

unreasonable and the force completely excessive. As the Fifth Circuit opined in *Hanks*, "a reasonable officer on the scene would have known that suddenly resorting to physical force as [Defendant Vallejo-Martinez] did would be clearly excessive and clearly unreasonable." *Hanks*, at 745.

64. The *Hanks* court opined further, noting "…clearly established law demonstrated that an officer violates the Fourth Amendment if [s]he abruptly resorts to overwhelming physical force rather than continuing verbal negotiations with an individual who poses no immediate threat or flight risk, who engages in, at most, passive resistance…" *Id.*, at 747.

65. Mr. Sanders suffered physical injury, pain, and mental anguish as a direct result of the excessive force used against him.

66. Defendant Vallejo-Martinez caused Mr. Sanders to endure pain and suffering by accosting him and tasing him without cause or justification.

67. These injuries were only caused by this accosting and tasing and not by any other means.

## COUNT TWO
### § 1983 *Monell* Claim against CITY OF SAN ANTONIO, TEXAS

68. Plaintiff incorporates by reference all of the foregoing and further alleges the following:

69. The conduct of Defendant Vallejo-Martinez constituted unlawful, unreasonable excessive force against Mr. Sanders without legal cause or justification.

70. At all material times, Defendant Vallejo-Martinez acted under color of state law, as a licensed Texas peace officer, utilizing the weapons, uniform, and other implements afforded him as an agent of the CITY OF SAN ANTONIO, TEXAS.

71. Defendant Vallejo-Martinez was acting within the course and scope of his duties as a courtesy officer for the Edge & Stone Apartments. Immediately prior to that, Defendant Vallejo-Martinez had completed a shift for the City of San Antonio, TX Police Department officer when he brutally accosted and tased Plaintiff Sanders. At all times relevant to this lawsuit, Defendant Vallejo-Martinez was clad in his City of San Antonio, TX Police Department-issued uniform.

72. Chief William McManus is the Defendant's policymaker for all matters related to the City of San Antonio, TX Police Department, having been delegated the policymaking authority by the City of San Antonio, TX City Council.
73. Consequently, the City of San Antonio, TX had or ratified the following policies, customs, and/or practices in place when Defendant Vallejo-Martinez attacked Mr. Sanders:
a. Allowing Defendant Vallejo-Martinez and other City of San Antonio officers to utilize City uniforms and equipment in "off-duty" jobs;
b. A City of San Antonio use of force policy that does not expressly disallow the use of tasers or other electronic control devices (ECDs) when a subject is wet.
74. Chief McManus and his command staff were all deliberately indifferent to the natural by-products of this policy, practice, and/or custom, of which he was aware, authorized, ratified, accepted, exacerbated, and encouraged, instead of rectifying it and ensuring civilians were not hurt by it.
75. It was clear that a constitutional violation was a very likely outcome of the ratification, adoption, and promotion of this policy, particularly with respect to the policy, custom, or practice of allowing the use of less-lethal ECD (taser) devices.
76. Chief McManus and his command staff knew or should have known that allowing Defendant Vallejo-Martinez to utilize City uniforms and equipment in "off-duty" jobs and allowing the use of ECDs on wet subjects would result in citizens being detained or arrested illegally and subjected to unjustifiable force.
77. This policy, *supra*, was actually known, constructively known, and/or ratified by City of San Antonio, TX and its policymakers, including Chief McManus, and was promulgated with deliberate indifference to Mr. Sanders's rights under the United States Constitution and the rights of all others making contact with City of San Antonio, TX officers. The policymakers of the City of San Antonio, TX Police Department knew that their officers would continuously be put in situations wherein constitutional violations like those aforementioned in this complaint would occur. These policies made it highly likely that such constitutional violations as those previously described would occur, under color of state law. The previously mentioned policies were a moving force of Mr. Sanders's constitutional deprivations and injuries, causing his to experience physical and mental injury and suffer damages.

## VII.
## **QUALIFIED IMMUNITY UNDER § 1983**

78. City Employees may be entitled to qualified immunity as to their individual liability. That immunity is waived, however, upon a showing by the Plaintiff that:

    a. The individual's acts deprived the party of constitutional rights under color of law;

    b. The deprived rights were clearly established, constitutional rights in existence at the time of the acts complained of; and

    c. Such acts were not objectively reasonable under the circumstances, that is, no reasonable official could have believed at the time that the conduct was lawful.

79. "In 'an obvious case,' [*Graham v. Connor*] and [*Tennessee v. Garner*] may supply the "clearly established law." *Hanks v. Rogers*, 853 F.3d 738, 747 (5th Cir. 2017) (citing *Mullenix v. Luna*, 136 S.Ct. 305, 308, 193 L. Ed. 2d 255 (2015)) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199, 125 S. Ct. 596, 160 L. Ed. 2d 583 (2004) (*per curiam*)); *see also Cooper*, 844 F.3d at 524. This case is an obvious case of excessive force and violation of the Fourth Amendment right against unreasonable searches and seizures, because Mr. Sanders was merely suspected of committing a Class C offense (public intoxication); Defendant had developed no reasonable suspicion that he had committed any crime beyond that Class C accusation; and Defendant had developed no probable cause to arrest him for any crime or use force, making the excessive force used completely unjustifiable.

80. Defendant Vallejo-Martinez, acting under color of state law, enforcing the policies, customs, and/or practices of the City of San Antonio, TX Police Department, deprived Mr. Sanders of his civil liberties, without due process of law, by accosting and tasing him unlawfully and unreasonably with clearly excessive force.

81. The Fifth Circuit has, in denying qualified immunity for officers, "placed weight on the quickness with which law enforcement personnel have escalated from negotiation to force." *Brothers v. Zoss*, 837 F.3d 513, 520 (5th Cir. 2016). The Court opined further to that end in the *Hanks* case, noting that "our case law clearly established that [the officer] should have continued to verbally negotiate — including by threatening force, if necessary — rather than abruptly resorting to 'actual' physical force." *Hanks*, at 748.

82. No reasonable official could have believed that accosting and tasing Mr. Sanders was lawful, let alone humane or remotely appropriate in this circumstance. "Any reasonable officer should have realized that [Officer Vallejo-Martinez's unlawful, unreasonable tasing and illegal detention of Mr. Sanders] offended the Constitution." *Taylor v. Riojas*, 141 S.Ct. 52, at 54 (2020).

83. The Fifth Circuit has also recognized a citizen's right to be free from unlawful restraint in *Trammel v. Forge*. In that case, the court instructed that the "central concept [with respect to qualified immunity] is that of 'fair warning:' the law can be clearly established 'despite notable factual distinctions' between the precedents relied on and the case then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." *Trammel v. Forge*, 868 F.3d 332, 339 (5th Cir. 2017).

84. The acts of Defendant Vallejo-Martinez were unreasonable under the circumstances when viewed objectively.

85. Defendant Vallejo-Martinez was deliberately indifferent to the excessive risk of harm to Mr. Sanders in the actions he took, particularly with respect to tasing a wet subject, which is extraordinarily dangerous, considering water conducts electricity. Such acts deprived Mr. Sanders of and violated his clearly established constitutional rights and were not objectively reasonable.

86. The acts of Defendant Vallejo-Martinez clearly violated established rights under the Constitution and statutes. A reasonable person would have known that Mr. Sanders's constitutional rights of protection against unreasonable searches and seizures were enshrined by the Fourth Amendment to the Constitution and that Defendant Vallejo-Martinez' actions were violative of such rights.

87. The acts of Defendant Vallejo-Martinez were salient in their wrongness and grossly offensive. Only an officer violating the law or who is plainly incompetent would perform such an act as accosting and tasing a subject on whom he has neither reasonable suspicion beyond a Class C public intoxication offense nor probable cause to detain or arrest him, let alone subject him to physical force. Thus, Defendants are liable to Plaintiff for the damages caused by their actions, which were the direct and proximate causes, in each count alleged above respectively, of Mr. Sanders's injuries.

## VIII.
## DAMAGES

88. Mr. Sanders repeats and re-alleges each and every allegation contained in the above paragraphs as though fully delineated below.

89. Plaintiff seeks monetary relief and for judgment of all the other relief to which he deems himself entitled.

90. Mr. Sanders' injuries were foreseeable and directly and proximately caused by the excessive force used against him.

91. Mr. Sanders is thus entitled to recover all actual damages allowed by law. The Defendant's conduct shows malice, wanton disregard, and reckless or callous indifference to Plaintiff's constitutional rights.

92. As a direct and proximate result of the occurrence underlying this lawsuit, Mr. Sanders suffered:

   a. Physical injuries, including impairment;
   b. Physical pain and suffering;
   c. Deprivations of his liberty;
   d. Emotional distress, torment, and mental anguish; and
   e. Reasonable and necessary medical care to treat his injuries in the past and future.

93. Plaintiff seeks to recover reasonable attorney's fees and costs of court, pursuant to 42 U.S.C. § 1983 and § 1988.

## IX.
## ATTORNEY'S FEES

94. If Plaintiff prevails in this action, by settlement or otherwise, Plaintiff is entitled to and hereby demands attorney's fees under 42 U.S.C. §1988.

## X.
## JURY DEMAND

95. Plaintiff respectfully requests a jury trial in this matter.

## PRAYER

WHISEFORE, PREMISES CONSIDERED, Plaintiff prays that judgment be rendered against all Defendants, for an amount in excess of the jurisdictional minimum of this Court.

Plaintiff further prays for all other relief, both legal and equitable, to which he may show himself justly entitled.

Respectfully Submitted,

**WEBB CASON & MANNING, P.C.**
710 Mesquite Street
Corpus Christi, Texas 78401
Telephone:   (361) 887-1031
Facsimile:   (361) 887-0903


   */s/ Matthew S. Manning*
MATTHEW S. MANNING
State Bar No.: 24075847
General Correspondence Email:
E: matt@wcctxlaw.com

ATTORNEY FOR MICHAEL SANDERS