IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MICHAEL SANDERS, | § | |
| *Plaintiff,* | § | 5:23-CV-00447-FB-RBF |
| | § | |
| vs. | § | |
| | § | |
| CITY OF SAN ANTONIO, TEXAS, | § | |
| JOSUE VALLEJO-MARTINEZ, | § | |
| | § | |
| *Defendants.* | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns Defendant City of San Antonio's Motion for Summary Judgment. *See* Dkt. No. 29. All pretrial matters in this action have been referred for resolution pursuant to Rules CV-72 and 1 of Appendix C to the Local Rules for the United States District Court for the Western District of Texas. *See* Dkt. No. 10. Authority to enter this recommendation stems from 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, Defendant City of San Antonio's Motion for Summary Judgment, Dkt. No. 29, should be **GRANTED**.

**Factual and Procedural Background**

This 42 U.S.C. §1983 action involves allegations of excessive force in connection with the tasing of plaintiff Michael Sanders by off-duty San Antonio Police Department (SAPD) Officer Vallejo-Martinez. On May 2, 2021, Sanders was enjoying his apartment complex's pool, along with a group of friends and family members. *See* Dkt. No. 1 (Compl.) ¶12-14. Defendant

SAPD Officer Vallejo-Martinez, working in an off-duty capacity, was patrolling the complex as a courtesy officer. When he came across Sanders and company, Officer Vallejo-Martinez requested that the group vacate the pool area because it was near the pool's closing time. *Id*. ¶14-16. Vallejo-Martinez then, according to Sanders, "approach[ed] the main pool gate and shine[d] his flashlight towards the group while yelling for them to pack their things and leave or they would be arrested for public intoxication." *Id*. ¶15; *see also* Dkt. No. 29 (Mot.) ¶3.

 As Officer Vallejo-Martinez then opened and passed through the gate to the pool area, the complaint explains, Sanders approached him wanting to ask, "why he was threatening arrest." Compl. ¶18. Sanders's complaint explains that he continued to ask questions of Officer Vallejo-Martinez but received no response. *Id*. ¶¶18-21. According to Defendants' version of events, Sanders then moved toward Vallejo-Martinez and extended his arms. Mot. at 1-2. When Vallejo-Martinez moved to restrain Sanders and grabbed his right arm, the Defendants allege, Sanders pulled his arm away and turned from the officer. *Id*. at 2. All agree that Vallejo-Martinez then deployed his taser, striking Sanders' chest. Compl. ¶25; Mot. Exb. A. (Use of Force Report).

Sanders initiated this action on April 12, 2023, suing the City of San Antonio (the "City") and Officer Josue Vallejo-Martinez alleging a violation of his Fourth Amendment rights due to the use of excessive force by Defendant Vallejo-Martinez. *See* Compl. Defendant City of San Antonio filed the present Motion for Summary Judgment seeking dismissal under Federal Rule of Civil Procedure 56. *See* Mot.

### Legal Standard

The Court grants summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P.

56. To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the non-moving party's claim or defense, or, if the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the nonmovant's claim or defense. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (citing, *inter alia*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

Once the movant carries this initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *See Fields v. City of S. Hous.*, 922 F.2d 1183, 1187 (5th Cir. 1991). Any "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003). "[O]nly a scintilla of evidence" will not meet the nonmovant's burden. *Little*, 37 F.3d at 1075. Rather, the nonmovant must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). The Court will not assume, "in the absence of any proof[,] . . . that the nonmoving party could or would prove the necessary facts," and it will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075.

For a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the nonmovant, or, in other words, that the evidence favoring the nonmovant is insufficient to enable a reasonable jury to return a verdict for the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In

3

making this determination, a court should review all the evidence in the record, giving credence to the evidence favoring the nonmovant as well as the "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). A court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment, *id.* at 150, and it must review all facts in the light most favorable to the nonmoving party. *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009).

**Analysis**

A § 1983 claim seeking to impose municipal liability must have the following three elements: (1) a policymaker; (2) an official policy; and (3) a violation of a constitutional right for which the "moving force" was the policy or custom. *See Monell v. Dep't. of Soc. Servs.,* 436 U.S. 658, 694 (1978). An official policy, for these purposes, can be "'a policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority.'" *Brown v. Bryan Cnty., OK*, 219 F.3d 450, 457 (5th Cir. 2000) (brackets omitted and quoting *Bennett v. City of Slidell,* 735 F.2d 861, 862 (5th Cir.1984) (en banc)). An official policy can also take the form of "[a] persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Id.*

The third element's "moving force" inquiry contemplates that "a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of Cnty. Com'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404 (1997) (*Bryan County*). The

required showing of causation is greater than mere "but for" causation. *See Fraire v. City of Arlington*, 957 F.2d 1268, 1281 (5th Cir. 1992). Under the culpability requirement, "a plaintiff seeking to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights must demonstrate that the municipal action was taken with deliberate indifference as to its known or obvious consequences." *Bryan County*, 520 U.S. at 407 (internal quotations omitted). "A showing of simple or even heightened negligence will not suffice." *Id.*

The Fifth Circuit has explained that "each and any policy which allegedly caused constitutional violations must be specifically identified by a plaintiff." *Piotrowski v. City of Houston*, 237 F.3d 567, 579-80 (5th Cir. 2001). Sanders states in the live complaint that there are "two general policies at issue here."

- "Allowing Defendant Vallejo-Martinez and other City of San Antonio officers to utilize City uniforms and equipment in "off-duty" jobs." Compl. ¶ 73(a).

- "A City of San Antonio use of force policy that does not expressly disallow the use of tasers or other electronic control devices [ ] when a subject is wet." Compl. ¶ 73(b).

*See also* Resp. at 9-10. Elsewhere, in his Response to the Motion for Summary Judgment, Sanders refers to the following policy issues:

> The policy of allowing off-duty police to wield Tasers at second jobs, including at job sites outside the home jurisdiction; coupled with the enactment of ambiguous policies regarding use of force while working the off-duty jobs, ambiguous policies regarding when the use of force can be used outside the home jurisdiction, the lack of a clear policy or adequate training that would prohibit the Tasing of wet subjects despite the clear danger posed to subjects by that activity, were all but-for cause of Sanders' injuries.

Resp. at 8.

The Court concludes Sanders is alleging failure-to-supervise and failure-to-train claims in connection with an alleged policy of allowing off-duty police work in uniform while carrying

department-issued equipment like tasers, and a failure-to-train claim with regard to the use of a taser on a wet subject.

Because Sanders does not allege a facially unconstitutional policy, he must show deliberate indifference on the part of SAPD. *See Bryan County*, 520 U.S. at 407; *see also Piotrowski*, 237 F.3d at 579 ("While an unconstitutional official policy renders a municipality culpable under § 1983, even a facially innocuous policy will support liability if it was promulgated with deliberate indifference to the 'known or obvious consequences' that constitutional violations would result."). Moreover, Sanders does not allege a past pattern of similar violations but instead relies on the single incident at issue in the complaint. *See Hutcheson v. Dallas Cnty.*, *Tex.*, 994 F.3d 477, 482  (5th Cir. 2021) (noting that deliberate indifference is typically shown through a pattern of past similar violations). Accordingly, although "it is still possible to establish deliberate indifference through the single-incident exception," that exception is "extremely narrow." *Id.*

> The plaintiff must prove that the highly predictable consequence of a failure to train would result in the specific injury suffered. For a violation to be highly predictable, the municipality must have failed to train its employees concerning a clear constitutional duty implicated in recurrent situations that a particular employee is certain to face. The single-incident exception is generally reserved for those cases in which the government actor was provided no training whatsoever.

*Id.* at 482-83 (quotations and citations omitted, cleaned up). The burden to show deliberate indifference falls on the plaintiff. *See Peterson v. City of Fort Worth*, 588 F.3d 838, 851-852 (5th Cir. 2009).

### A.    The Failure-to-Train Claims Fail.

Sanders has not demonstrated a triable fact dispute concerning any failure to train which could amount to deliberate indifference. To establish a failure-to-train claim, a plaintiff must

show that (1) the municipality's training policy or procedure was inadequate; (2) the inadequate training policy was a "moving force" in causing a violation of the plaintiff's rights; and (3) the municipality was deliberately indifferent as to its training policy. *Valle v. City of Houston*, 613 F.3d 536, 544 (5th Cir. 2010). "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by the municipality can the failure be properly thought of as an actionable city 'policy.'" *City of Canton, Ohio v. Harris*, 489 U.S. 378, 379 (1989).

Sanders alleges, based on the single incident at issue in this case, that the SAPD was deliberately indifferent to the obvious need for training on the risk of injuries from the use of tasers on wet subjects. In support, Sanders points to testimony from Detective Cynthia Lindley and Sergeant Carillo, who state that they were not trained on the use of tasers on wet subjects. *See* Resp. Ex. A (Lindley Dep.) at 69:11-22; Resp. Ex. E (Carillo Dep.) at 22:12-23:11 & 91:12-92:6. In a single-incident case, this showing is insufficient on summary judgment because to move beyond summary judgment Plaintiff must be able to show that "the highly predictable consequence of a failure to train would result in the specific injury suffered," and there are no fact issues presented as to that showing here.

Other single-incident failure-to-train cases confirm the Court's conclusion. In *Brown v. Bryan County*, for example, the officer received no training at all on use of force. 219 F.3d 450 (5th Cir. 2000). The Court highlighted that the policy maker was "on notice" of the potential for the specific harm suffered. *Id.* at 462. Here, such a showing would require some evidence pointing to a dispute about whether SAPD was on notice of the specific danger of taser use on wet subjects; Plaintiff points to no such evidence. Compare that with *Brown*, where abundant facts put the policymakers "on notice," including the arrest records of the officer involved in the

7

incident, past complaints made against him, and expert opinions provided on the standards of training expected for officers. *See* 219 F.3d at 461-462.

Lacking evidence that the City was aware of any risk of injury from taser use on wet subjects (as opposed to dry ones), Sanders asserts that the risk of such harm is "patently obvious," and that the use of a taser in such manner is inherently dangerous. *See* Resp. at 14, 17. In doing so, however, Sanders does not provide any evidence that the SAPD knew the use of tasers on wet subjects had ever in the past caused heightened or different injury than taser use against a dry subject. Sanders mistakenly relies on *Piazza v. Jefferson County* as support for the claim that taser use on a wet subject is a recognized form of excessive force. 923 F.3d 947 (11th Cir. 2019). *Piazza*, involved a man who, when tased by a prison guard, fell to the ground and urinated. Within eight seconds of the first tasing, and while the man lay prone on the ground, the guard then tased the man again. The case had nothing to do with the fact that the subject was wet when tased a second time, and the opinion, on the Court's reading, never suggested that the subject's wetness in any way contributed to his injury. *See id*. at 956-57 (reviewing a series of Eleventh Circuit cases where excessive force was found when the subject was already restrained, unconscious, or on the ground).

Sanders also argues that the fact the taser policy and the training on taser use included a restriction on tasers where the person could drown indicates deliberate indifference. This argument is a non sequitur. To start, the argument concedes that—unlike the vast majority of single-incident cases that move beyond summary judgment—here there was some training on taser use; this is not a case where there simply was no taser training whatsoever, let alone no training on the use of force. Moreover, the inclusion of training on a drowning danger, if

anything, reinforces that SAPD was unaware of any heightened risk of taser use for subjects who were merely wet and not immersed in or very near a body of water.

Sanders has presented no material fact question to show that it was a "highly predictable consequence" that a failure to train on taser use against wet subjects "would result in the specific injury suffered" here. *Hutcheson*, 994 F.3d at 482-83.

Sanders also alludes to a failure-to-train claim regarding officers enforcing so-called "house-rules." Resp. at 8. To the extent this is a separate theory for a failure-to-train claim, it fails. The record reflects that officers were in fact instructed that when off duty they could not enforce house-rules, which are private policies or rules adopted by private businesses or entities. Sanders notes this policy and training in his Response:

> The officer does not enforce private policies, also known as 'house rules.' Private policies or 'house rules' refer to internal rules and policies that govern consumers and patrons of the business or event as they concern the management and activities of consumers and patrons while at said businesses or event.

Resp. ¶25; *see also* San Antonio Police Department, General Manual, § 905 - Off Duty and Outside Employment (revised March 29, 2017). No evidence suggests that Officer Vallejo-Martinez was not trained in this matter. Sanders, in his Response, states that Detective Lindley did not know about the policies for off-duty enforcement of house rules. Resp. ¶34 (citing Lindley Dep. 33:14-17). But the deposition transcript clarified that Lindley has never worked in an off-duty capacity.

> Q.    What is your understanding of SAPD's rules that relates to if you're working off duty and enforcing the house rules of your off-duty employer?
>
> A.    I don't know. I've – I've never worked in that capacity, so I -- I don't know.

Resp. Ex. A, Lindley Dep. 33:14-17. There is no disputed fact issue as to a failure-to-train on this issue as it pertains to Officer Vallejo-Martinez. Moreover, as with Sanders' other failure-to-train

allegations, there is no disputed fact issue concerning whether it was a "highly predictable consequence" that a failure to train on house-rules enforcement "would result in the specific injury suffered" here. *Hutcheson*, 994 F.3d at 482-83.

**B.    The Failure-to-Supervise Claims Fail.**

The failure-to-supervise claims involve allegations that the SAPD was deliberately indifferent to the need to supervise officers working off-duty in uniform and carrying SAPD equipment and weapons. For the City to be liable for the SAPD's failure to supervise, it at least must have been obvious that "the highly predictable consequence" of not supervising its officers was that they "would apply force in such a way that the Fourth Amendment rights of [citizens] were at risk." *Id.* at 461.

At the outset, this claim appears infirm. There is, for example, no evidence of any policy of failing to supervise. To be fair, Sanders asserts, repeatedly, that Vallejo-Martinez was not supervised, but there simply is no evidence to support this contention. Pushing back against Sanders' assertions, the City provided the San Antonio Police general manual, which has an extensive section describing the supervisory responsibilities and procedures regarding use of force by an officer. Dkt. No. 29-3. Further, a review of the documents referenced by the City reveals a robust policy monitoring police behavior while working off-duty, including the instruction that "[w]hile engaging in off-duty employment in city facilities or outside employment, officers are subject to all applicable procedures, policies, rules, and regulations of the Department and the City." This policy also contains its own provisions for supervision of off-duty officers. *See* San Antonio Police Department, General Manual, § 905 - Off Duty and Outside Employment (revised March 29, 2017). There is, therefore, no possible dispute about a policy of absent supervision; at most, the issue here would be inadequate supervision.

10

But as to any policy of inadequate supervision of off-duty officers, there is no evidence presented that the City was aware of a "highly probably consequence" of a violation of rights due to a lack of more robust supervision. Again, this single incident does not support any such conclusion, and, once again, the existence of robust training in use of force and a policy governing off-duty work suggests the opposite of Plaintiff's contentions. Sanders does not point to a triable issue as to any policy of absent supervision, or that a "highly probably consequence" of the policy of alleged lack of supervision would be a violation of citizens' rights.

### C.    Allegations of Ambiguity in the Policies Do Not Assist Sanders.

Finally, Sanders alleges the policies as written are ambiguous, and that this lack of clarity points to deliberate indifference to the known or obvious likelihood that there will be resulting constitutional violations. Resp. at 8. This argument fails because, as discussed above, deliberate indifference goes "beyond mere negligence or even gross negligence." *James v. Harris County*, 577 F.3d 612, 617 (5th Cir. 2009). For this type of claim, a plaintiff must demonstrate a degree of indifference that "amount[s] to an intentional choice, not merely an unintentionally negligent oversight." *Id.* at 617–18. This requires "proof that a municipal actor disregarded a known or obvious consequence of his action." *Brown*, 520 U.S. at 410.

Sanders presents no material fact dispute as to whether the SAPD knew its policies for off-duty officers or taser use would lead to a constitutional violation. As already addressed, there is no evidence of a pattern of past incidents that could inform policymakers. There are presented no records that off-duty officers subject to this policy received complaints for similar incidents, or even records of similar off-duty excessive-force complaints. Sanders presents only barefaced allegations that the policies at issue can be expected to lead to unconstitutional behavior, and this is not sufficient in a single-incident case where the showing required is deliberate indifference.

**D.    Sanders' Efforts to Engage with Single-Incident Cases Are Unsuccessful.**

To the extent Sanders engages with the case law on single incident cases, he does so primarily by referencing three cases: *Connick v. Thompson*, 563 U.S. 51, 62-63 (2011), *Valdez v. Macdonald*, 66 F.4th 796, 819 (10th Cir. 2023), and the non-precedential *Bond v. Nueces County., Texas*, No. 20-40050, 2022 WL 4595000 (5th Cir. Sept. 30, 2022) (unpublished). These cases do nothing to reflect that summary judgment should be denied here.

In *Connick*, the Court found *no* failure-to-train. Moreover, in discussing a hypothetical scenario from another case, *City of Canton*, the Court explained that a single-incident exception may be found where an officer receives no training at all on the limits of the use of deadly force. *Connick*, 563 U.S. at 63 (analyzing *City of Canton*, 489 U.S. at 390). But here, as already discussed at some length, Vallejo-Martinez did receive training on the use of force and was subject to policies and rules regarding off-duty work.

Sanders' invocation of the Tenth Circuit's decision in *Valdez* is also unavailing. Resp. at 14 (citing *Valdez*, 66 F.4th 796). Here, in the Fifth Circuit, the limits on the single-incident exception, which the Court has already discussed at some length, are stringent and narrow.

> Our caselaw suggests, however, that the [single-incident] exception is generally reserved for those cases in which the government actor was provided no training whatsoever. In *Brown v. Bryan County*, 219 F.3d 450, 453-54, 462 (5th Cir. 2000), we held the single-incident exception satisfied where a reserve deputy, with "*no training*" from the police department applied excessive force during a car chase. Our later decisions have distinguished *Brown*, emphasizing that "there is a difference between a *complete failure to train* [ ] . . . and a failure to train in one limited area.

*Peña v. City of Rio Grande*, 879 F.3d 613, 624 (2018). Sanders too often conflates an alleged failure to train in a limited area with a complete failure to train at all. And even if Sanders were to properly invoke a failure to train in a "limited area," there is still a high bar to clear for any such claim. In such a case, a plaintiff must still prove a causal connection, and an obvious or

12

known likelihood of injury, which for all the reasons discussed above Sanders has not shown a triable issue. *See, e.g.*, *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 849 (5th Cir. 2009) (the risk of injury from not providing training on "knee strikes" in the use of force training was not obvious to policy makers).

Finally, citing *Bond v. Nueces County, Texas*, Sanders asserts a theory under which a "set of cascading policy failures specific to an individual person's treatment can show a pattern of action for *Monell* purposes." Resp. at 12. This "cascading failures" theory, as defined by Sanders, supports a *Monell* claim "by alleging 'a pattern of failures' that occurred over the course of [a plaintiff's] time in custody." *Id.* (citing *Bond*, 2022 WL 4595000 at *7-*8). *Bond*'s cascade of failures occurred while the plaintiff was in custody such that the single incident at issue rose to the level sufficient to warrant surviving a motion to dismiss. This case is at the summary judgment phase, and for all the reasons already discussed, the City has met its summary judgment burden and Sanders has failed to point to a triable issue.

### Conclusion and Recommendation

For the reasons discussed above, it is recommended that Defendant City of San Antonio's Motion for Summary Judgment, Dkt. No. 29, be **GRANTED**.

Having considered and acted upon all matters for which the above-entitled and numbered case was referred, it is **ORDERED** that the above-entitled and numbered case is **RETURNED** to the District Court for all purposes.

### Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy by certified mail, return receipt

requested, to those not registered. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Objections, responses, and replies must comply with the same page limits as other filings, unless otherwise excused by the district court's standing orders. *See* Rule CV-7. The objecting party shall file the objections with the clerk of the court, and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusory, or general objections. A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root*, *Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to timely file written objections to the proposed findings, conclusions, and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**IT IS SO ORDERED**.

SIGNED this 29th day of August, 2025.

_____
RICHARD B.  FARRER
UNITED STATES MAGISTRATE JUDGE